In re Shirley A. INGERSOLL, Debtor.

**William Todd Drown, Plaintiff,**

**v.**

**National City Bank, Defendant.**

**Bankruptcy No. 07–58850.
Adversary No. 08–2003.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division,
at Columbus.

March 23, 2009.

D. Brent Marshall, Butler & Marshall, Washington Court House, OH, for Debtor.

William Todd Drown, Mount Vernon, OH, pro se.

## MEMORANDUM OPINION DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

JOHN E. HOFFMAN, JR., Bankruptcy Judge.

### I.  Introduction

Prior to filing her Chapter 7 petition, Shirley A. Ingersoll ("Mrs. Ingersoll" or "Debtor") appeared before a notary public and signed a mortgage on which she and her now late husband, Dallas Ingersoll ("Mr.Ingersoll"), were named as mortgagors.  She signed the mortgage both on her own behalf and, pursuant to a valid power of attorney, on behalf of Mr. Ingersoll, who at the time was the co-owner of the mortgaged property.  The notary public's certificate of acknowledgment stated that both of the Ingersolls personally appeared and signed the mortgage, when in fact only Mrs. Ingersoll did so.  Contending that this made the mortgage defectively executed with respect to Mr. Ingersoll's one-half interest in the property, the Chapter 7 trustee, William Todd Drown ("Trustee"), seeks to avoid the mortgage as to that one-half interest.  By virtue of her power of attorney, however, Mrs. Ingersoll's signature on the mortgage—the acknowledgment of which the Trustee concedes is valid—mortgaged Mr. Ingersoll's interest in the property as fully as if he had executed the mortgage in person. The Court, therefore, concludes that the mortgage was valid with respect to Mr. Ingersoll's interest in the property and grants summary judgment against the Trustee and in favor of the defendant/mortgagee, National City Bank ("National City").

### II.  Jurisdiction

The Court has jurisdiction to determine this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in this district. This is a core proceeding.  See 28 U.S.C. § 157(b)(2)(A), (K) and (O).

### III.  Background

Following a pretrial conference on the complaint initiating this adversary proceeding ("Complaint"), the parties agreed to a determination of the issues by dispositive motions.  The Trustee filed a motion

for summary judgment ("Motion") (Doc. 10), and National City filed a response and cross-motion for summary judgment ("Cross–Motion") (Doc. 12). The Trustee filed a reply ("Reply") (Doc. 13), and National City filed a sur-reply (Doc. 14). The factual recitations that follow are drawn from these filings, as well as from the documents submitted by the Debtor in her bankruptcy case. Although the parties have not filed stipulations, there is no dispute regarding the material facts set forth below.

On April 4, 1974, Silver Dollar, Inc. conveyed the fee simple interest in real property located at 86 Biddle Boulevard, Bloomingburg, Ohio ("Property") to the Ingersolls, who took the Property jointly with right of survivorship. The deed conveying the Property was filed with the Fayette County, Ohio Recorder's Office ("Recorder") that same day. (Complaint, Ex. A.)

On February 4, 2005, Mr. Ingersoll, who was suffering from a terminal illness, executed a general power of attorney appointing Mrs. Ingersoll as his attorney-in-fact in all business, financial, legal and other matters ("Power of Attorney"). The Power of Attorney states that it is governed by Ohio law. The Power of Attorney authorized Mrs. Ingersoll:

> generally to act for me and in my name in all matters affecting my business or property, real or personal, with the same effect as though I were personally present and acting for myself; and hereby ratifying and confirming whatever said attorney may do under this Power of Attorney.

Motion, Ex. D.

Among other powers granted to Mrs. Ingersoll was the power:

> to borrow money and to sign and deliver any bond, note or other evidence [of] debt or other instrument in writing nec-

essary or proper in connection with said loan, and to endorse, assign, pledge, mortgage and hypothecate any and all of my property, real or personal, as security for such loan, on such terms as to said attorney may seem proper[.]

*Id.* The Power of Attorney was recorded with the Recorder on February 4, 2005. *Id.* The Trustee has not challenged the validity of the Power of Attorney.

On February 4, 2005, Mrs. Ingersoll signed an open end real estate mortgage with National City ("Mortgage") (Complaint, Ex. C) with respect to the Property. The Mortgage has two lines for signatures. Under the first line is the typewritten name "Shirley A. Ingersoll." Under the second line is the typewritten name "Dallas M. Ingersoll." Mrs. Ingersoll's signature, followed by the handwritten word "Wife," appears above her typewritten name. Above Mr. Ingersoll's typewritten name appears the signature "Dallas M. Ingersoll Husband by Shirley A. Ingersoll P.O.A."

Following the signatures is a certificate of acknowledgment ("Acknowledgment") that reads as follows:

> STATE OF OHIO )
> )
> Fayette          COUNTY )
>
> BEFORE ME a Notary Public in and for said County and State personally appeared the above named *Shirley A. Ingersoll and Dallas M. Ingersoll* who acknowledged that *they* did sign the foregoing instrument, and that the same is *their* free act and deed.
>
> IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal, this *4th* day of *February,* 2005.

David J. Scurlock, a notary public, signed the Acknowledgment, and his notarial stamp with seal and the expiration date of his commission appear below his signature. The Mortgage was recorded with the Re-

corder on March 14, 2005. The parties agree that Mrs. Ingersoll signed the Mortgage using her own name and using the name of her husband followed by the designation P.O.A. They also agree that she personally appeared before the notary public and acknowledged her signature on the Mortgage but that Mr. Ingersoll did not personally appear.

On February 23, 2005, Mr. Ingersoll died. A notarized affidavit of death was filed with the Recorder on March 14, 2005. (Complaint, Ex. B.) The affidavit stated that the Ingersolls were the owners of the Property with right of survivorship and set forth a legal description of the Property. The affidavit then provided that "[t]he Auditor and Recorder of Fayette County, Ohio, are asked to transfer and record the transfer of decedent's interest herein to the surviving spouse, Shirley A. Ingersoll."

On October 31, 2007 ("Petition Date"), the Debtor filed a voluntary Chapter 7 petition and also filed her schedules of assets and liabilities. On Schedule A (real property in which the Debtor has an interest), she listed the Property with a value on the Petition Date of $75,000 and a mortgage of $71,000. On Schedule D (creditors holding secured claims), she listed National City, which later filed a secured claim in the amount of $69,466.74 on account of the Mortgage.

By the Complaint, the Trustee, pursuant to § 544(a)(3) of the Bankruptcy Code,[1] seeks to avoid the Mortgage as to the one-half interest in the Property once owned by Mr. Ingersoll (Count I) and preserve the Mortgage for the benefit of the Debtor's bankruptcy estate under § 551 of the Code[2] (Count II). In addition, the Trustee seeks a judgment permitting the Trustee to sell the Property under § 363(h) and pay one-half of the proceeds of the sale to National City, with the remaining proceeds payable, after deduction of costs of sale, to the Debtor's bankruptcy estate (Count III). In the alternative, Count III seeks an order reclassifying National City's claims as partially secured and partially unsecured.[3]

## IV. Arguments of the Parties

Under § 544(a)(3), the Trustee may assert the rights of a hypothetical bona fide purchaser of real property from the Debtor as of the Petition Date. Recognizing that he cannot be a bona fide purchaser if

---

1. Section 544(a)(3) of the Bankruptcy Code provides in pertinent part as follows:

   The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor ... that is voidable by ... a bona fide purchaser of real property ... from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

   11 U.S.C. § 544(a)(3).

2. "Any transfer avoided under section ... 544 ... is preserved for the benefit of the estate...." 11 U.S.C. § 551. Because the Mortgage constitutes "the creation of a lien" under § 101(54)(A), and because the Trustee is seeking its avoidance under § 544, if the Trustee were to avoid the Mortgage, § 551 would preserve it for the benefit of the Debtor's estate.

3. If applicable, § 363(h) would permit the Trustee to "sell both the estate's interest ... and the interest of any co-owner in property in which the [D]ebtor had, [as of the Petition Date], an undivided interest as a tenant in common, joint tenant, or tenant by the entirety...." 11 U.S.C. § 363(h). By virtue of her right of survivorship, the Debtor owned the entire fee interest in the Property; there was, therefore, no co-owner as of the Petition Date. Accordingly, § 363(h) does not apply here. Moreover, the Trustee has not provided any colorable basis for reclassifying a portion of National City's proof of claim as unsecured.

he had constructive notice of the Mortgage, the Trustee contends that the recording of the Mortgage failed to provide him with such notice. The basis for this argument is the Acknowledgment, which the Trustee contends is invalid under Ohio law as to Mr. Ingersoll because it stated that he personally appeared, when he in fact did not, and failed to state that Mrs. Ingersoll was acknowledging the signing of the Mortgage on his behalf.

National City does not dispute that Ohio law applies or that a trustee may avoid a defectively-executed mortgage. Rather, National City's response is twofold. First, it argues that the Acknowledgment as to Mr. Ingersoll substantially complied with Ohio law. Second, National City contends that Mr. Ingersoll was not required to personally appear and acknowledge his signature because Mrs. Ingersoll held a valid and properly recorded power of attorney authorizing her to, among other things, grant a mortgage on his real property.

## V. Legal Analysis

### A. Summary Judgment Standard

Under Fed.R.Civ.P. 56(c), made applicable in this adversary proceeding by Fed. R. Bankr.P. 7056, summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 577 (6th Cir.2007). In reviewing a motion for summary judgment, the Court views the evidence, all facts, and any inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Novak*, 503 F.3d at 577; *Skowronek v. Am. S.S. Co.*,

505 F.3d 482, 484 (6th Cir.2007) (the court "must draw all reasonable inferences in favor of the nonmoving party").

" '[A]s to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.' " *Niecko v. Emro Mktg. Co.*, 973 F.2d 1296, 1304 (6th Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "Entry of summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' " *Novak*, 503 F.3d at 577 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Ransier v. Standard Fed. Bank (In re Collins)*, 292 B.R. 842, 845 (Bankr. S.D.Ohio 2003).

Here, the parties agree, and the Court finds, that no genuine issue of material fact exists. Summary judgment, therefore, is appropriate.

### B. Validity of the Acknowledgment

At issue is whether a power of attorney authorizing the attorney-in-fact to grant a mortgage on the principal's real property renders valid a certificate of acknowledgment stating that both joint mortgagors personally appeared and acknowledged the mortgage when in fact only the attorney-in-fact did so on behalf of both. Because the Ohio Supreme Court has not yet addressed the effect of a power of attorney in this context, the Court's role is to "ascertain how that court would rule if it were faced with the issue." *Meridian*

*Mut. Ins. Co. v. Kellman,* 197 F.3d 1178, 1181 (6th Cir.1999). In so doing, the Court may consult "doctrinal trends embraced by [Ohio's] appellate courts" as well as "decisions from other jurisdictions. . . ." *Rousey v. United States,* 115 F.3d 394, 397 (6th Cir.1997) (citations and internal quotation marks omitted). *See also In re Kimble,* 344 B.R. 546, 552 (Bankr.S.D.Ohio 2006) ("[T]he Court must make the best prediction . . . of what the [Ohio] Supreme Court would do if confronted with [the issue]." (internal quotation marks omitted)).

■■■ The Trustee does not contest— and the Court finds no reason to question—the validity of the Power of Attorney, which fully complied with Ohio law. Under Ohio Revised Code § 1337.01, "[a] power of attorney for the conveyance, mortgage, or lease of any interest in real property shall be signed, acknowledged, and certified as provided in section 5301.01 of the Revised Code."[4] Ohio Rev.Code Ann. § 1337.01 (West 2009). The Power of Attorney was properly signed, acknowledged and certified. Under Ohio Revised Code § 1337.02, a mortgage of any interest in real property "made by virtue of a power of attorney, must contain the name of the . . . mortgagor. . . ." Ohio Rev.Code Ann. § 1337.02. The Mortgage contained Mr. Ingersoll's name and identified him as a mortgagor. In addition, the Ingersolls satisfied the requirement, imposed by § 1337.04, that a power of attorney authorizing the mortgage of an interest in real property "be recorded in the office of the county recorder of the county in which such property is situated, previous to the recording of [the] . . . mortgage . . . by

virtue of such power of attorney." Ohio Rev.Code Ann. § 1337.04.

Having met each of these statutory requirements, the Power of Attorney has the effect set forth in Ohio Revised Code § 1337.02, under which a mortgage "made by virtue of a power of attorney . . . shall . . . mortgage . . . the interest of such . . . mortgagor . . . as fully as if such . . . mortgage . . . were executed by such . . . mortgagor . . . in person." Ohio Rev.Code Ann. § 1337.02. The Court, therefore, concludes that Mrs. Ingersoll's signature conveyed her husband's interest in the Property as fully as if he had executed the Mortgage in person. In other words, the only signature by the mortgagors that mattered was Mrs. Ingersoll's; her signature was the only one that needed to be acknowledged, and her acknowledgment was the only one that needed to be certified.

The Trustee does not dispute that Mrs. Ingersoll signed the Mortgage and acknowledged her signature before the notary public or that the notary public certified her acknowledgment and signed his name on the certification. Those actions fully complied with the requirements of Ohio law. *See Drown v. GreenPoint Mortgage Funding, Inc. (In re Leahy),* 376 B.R. 826, 832 (Bankr.S.D.Ohio 2007) (for an acknowledgment to comply with § 5301.01, "(1) [the mortgage] must be signed by the mortgagor; (2) the signing of the mortgage must be acknowledged before a notary public; (3) the notary public must certify that acknowledgment; and (4) the notary public must subscribe his name to the certificate of acknowledgment"). And again, Mrs. Ingersoll's sig-

---

4. Ohio Revised Code § 5301.01(A) provides as follows: "A . . . mortgage . . . shall be signed by the . . . mortgagor. . . . The signing shall be acknowledged by the . . . mortgagor . . . before a . . . notary public . . . who shall certify the acknowledgment and subscribe the official's name to the certificate of the acknowledgment." Ohio Rev.Code Ann. § 5301.01(A).

nature conveyed Mr. Ingersoll's interest in the Property as fully as if he had executed the Mortgage in person. The Court therefore concludes that Mrs. Ingersoll's signature on the Mortgage alone was sufficient to mortgage Mr. Ingersoll's one-half interest and that the Mortgage was validly-executed in its entirety.

The parties have not cited, and the Court's own review of case law authority has not revealed, a decision by an Ohio court analyzing the validity of a mortgage acknowledgment in a case with a fact pattern on all fours with the present case. But the Court's independent research has uncovered one decision issued by an Ohio appellate court—*Huntington Nat'l Bank v. Kazmaier*, 175 Ohio App.3d 130, 885 N.E.2d 314 (2008)—arising from a factual situation closely analogous to that before the Court here. In *Kazmaier*, the court of appeals was required to determine whether a mortgage executed under a power of attorney had been properly acknowledged. There, separate powers of attorney had been executed by Elizabeth and Paul Kazmaier. The powers of attorney authorized two of their children, Terrence and Timothy, to act on their behalf with respect to their property. Thereafter, Elizabeth and Paul died. Prior to their death, Timothy obtained a line of credit from Huntington National Bank ("Huntington") and, to secure the line of credit, executed a mortgage in the names of his parents pursuant to the powers of attorney. *Kazmaier*, 885 N.E.2d at 315. Huntington filed a complaint against Timothy for amounts owing on the line of credit and against the current co-owners of the property (Timothy and his siblings) for foreclosure of the mortgage. Huntington then filed a motion for summary judgment on its foreclosure claim, contending that there was no question of material fact on the issue of whether the parents, through Timothy acting pursuant to the powers of attorney, had granted Huntington a mortgage on the property. *Id.* at 315–16. The siblings proffered an expert witness who opined that the mortgage was invalid because the certificate of acknowledgment stated that the mortgage was signed "'by Paul C. Kazmaier and Elizabeth Kazmaier, A.K.A. Elizabeth A. Kazmaier, husband and wife,'" when in fact it was signed only by Timothy. *Id.* at 316. The trial court held that the mortgage substantially complied with § 5301.01(A) and granted Huntington's motion for summary judgment. *Id.* The appeals court affirmed the trial court and concluded—for reasons that are equally applicable here—that the mortgage had been properly executed and, thus, the expert's opinion did not create a genuine issue of material fact:

> [The siblings] ... argue that the mortgage is invalid because the acknowledgment clause in the mortgage states that it was signed by Elizabeth Kazmaier, and Paul Kazmaier, but it was never signed by either of these individuals. A review of the mortgage discloses that the acknowledgment clause was signed, on behalf of Elizabeth Kazmaier and Paul Kazmaier, by Timothy Kazmaier in the exercise of the valid powers of attorney granted to him by his parents. The legal conclusion reached by [the] expert on this issue was that a mortgage signed by an agent under a power of attorney does not comply with [Ohio Revised Code § ] 5301.01. Such a conclusion flies in the face of [Ohio Revised Code § ] 1337.01 which, as a matter of law, not fact, allows the holder of a valid power of attorney to mortgage real property. In sum, due to the fact that the powers of attorney granted to Timothy Kazmaier are valid, we must agree with the trial court in finding that the mortgage in this cause is valid.

*Id.* at 319.

Here, as the *Kazmaier* court did with respect to the mortgage in that case, the

Court concludes that the Mortgage was validly executed and conveyed a lien on Mr. Ingersoll's interest in the Property. And, as the *Kazmaier* court found with respect to the incorrect statement that the elder Kazmaiers signed the mortgage, the Court finds that the inaccurate reference to Mr. Ingersoll's appearance does not render the Acknowledgment defective. Under Ohio law, all that was required to convey Mr. Ingersoll's interest in the Property was naming him in the Mortgage and having Mrs. Ingersoll sign the Mortgage pursuant to a previously-recorded power of attorney. The reference to Mr. Ingersoll's appearance was surplusage and, as such, does not affect the validity of the Acknowledgment. *See Shults v. Moore*, 22 F. Cas. 51, 52 (C.C.D.Ohio 1839) (No. 12,824) ("Every thing said in the certificate ... [that] was not required for the due authentication of the acknowledgment, may be rejected as surplusage, if enough appear[s] to authenticate the act. And we think enough appears ... in substance and in form, to verify the acknowledgment.").

In his Reply, the Trustee cites *Kendrick v. CIT Small Bus. Lending Corp. (In re Gruseck & Son, Inc.)*, 385 B.R. 799 (table), 2008 WL 1756243 (6th Cir. BAP Apr. 16, 2008), *appeal dismissed*, 558 F.3d 482, 2009 WL 564605 (6th Cir. Mar.6, 2009), in support of his contention that the Acknowledgment was defective. In *Gruseck*, the Chapter 7 trustee sought to avoid a mortgage signed by Lester Gruseck as President on behalf of the debtor, Gruseck & Son, Inc. The certificate of acknowledgment stated that Mr. Gruseck appeared before the notary, that he was the President of the debtor and that he signed the mortgage on its behalf. The court held that the certificate of acknowledgment was deficient because it did not state that Mr. Gruseck "had the authority to sign on behalf of the corporation, which generally involves a resolution by the board of di-

rectors, and that his signing was an act of the corporation." *Gruseck*, 2008 WL 1756243 at *5. According to the bankruptcy appellate panel ("BAP"), although Mr. Gruseck's authority "may be inferred from the fact that the corporation is listed as Grantor and [he] signed on [its] behalf ... as president, nothing in the acknowledgment supplies the required representation that the corporation had authorized this action." *Id.* In addition, the BAP found that the authority could not "be supplied by a reasonable construction of the whole instrument." *Id.* The BAP, therefore, held that the acknowledgment did not substantially comply with applicable Kentucky law in that it failed to establish that Mr. Gruseck "signed the instrument on behalf of the corporation by proper authority" as required by Kentucky law. *Id.* (internal quotation marks omitted). The BAP, however, did not address the existence or effect of any Kentucky statute analogous to Ohio Revised Code § 1337.02.

Neither the Trustee nor National City directed the Court's attention to *Lemeh v. EMC Mortgage Corp. (In re Crim)*, 81 S.W.3d 764 (Tenn.2002), an opinion decided on facts substantially similar to those present here. Nonetheless, the Court has considered *Crim* as part of its effort to predict how the Ohio Supreme Court would rule if confronted with the fact pattern presented in this adversary proceeding. In *Crim*, spouses Edward and Jayne Crim filed a voluntary Chapter 7 petition, and the Chapter 7 trustee commenced an adversary proceeding seeking to avoid a prepetition deed of trust. The parties stipulated that Mr. Crim was not personally present when the deed of trust was signed, that Mrs. Crim had authority to sign on his behalf and that she did so using the phrase "Edward J. Crim, Sr. POA Jayne Crim." *Crim*, 81 S.W.3d at 766. The acknowledgment clause on the deed of

trust incorrectly stated as follows: "[B]efore me personally appeared Edward J. Crim, Sr. and Jayne Crim, to me known to be the persons described in and who executed the foregoing instrument, and who acknowledged the execution of the same to be their free act and deed." *Id.* at 766–67 (emphasis omitted). Upon certification from the bankruptcy court presiding over the Crims's case, the Tennessee Supreme Court held that the deed of trust was improperly acknowledged even though Mrs. Crim had indicated on her husband's signature line that she was signing for him pursuant to a power of attorney. *See id.* at 766. According to the court, "the discrepancy in this case between the certificate of acknowledgment and the signatures on the deed of trust *lends uncertainty* about the legal effectiveness of the instrument." *Id.* at 768 (emphasis added). "Indeed, the acknowledgment contains *false statements* regarding the authentication of the signatures on the deed of trust." *Id.* (emphasis added).

For two reasons, the Court concludes that the result in *Crim* would have been different under Ohio law. First, in contradistinction to the Tennessee Supreme Court's apparent view that inconsistency between an acknowledgment and the signatures on a mortgage renders the acknowledgment defective, the Ohio Supreme Court has held to the contrary. *See Dodd v. Bartholomew,* 44 Ohio St. 171, 5 N.E. 866, 868 (1886). In *Dodd,* the Ohio Supreme Court was required to determine whether a mortgage had been properly acknowledged. There, the mortgagors signed their names—Charles *A.* Clark and *Sarah* Clark—accurately on the mortgage, but in the certificate of acknowledgment the justice of the peace certified that Charles *B.* Clark and *Mary* Clark appeared and acknowledged their signatures. The Ohio Supreme Court nonetheless held that the acknowledgment was valid, con-

cluding that "the inconvenience that may occasionally arise to third persons from uncertainty of description is more sufferable than the gross injustice which would be frequently inflicted by a stringent rule as to certainty." *Dodd,* 5 N.E. at 868 (internal quotation marks omitted). Second, while in *Crim* the court essentially held that a false statement in an acknowledgment makes the acknowledgment invalid, the Ohio Supreme Court has held to the contrary:

> It is a well-settled principle, applicable to the construction of deeds and other instruments, that all their parts are to be construed together, and the meaning ascertained from a consideration of each and every part; and, in the application of this rule, *it is uniformly held that a false description, whether of the subject-matter or of the parties, does not vitiate the instrument, where the error appears upon its face, and the instrument supplies within itself the means of making the correction.*

*Dodd,* 5 N.E. at 867 (emphasis added).

Finally, in *Gregory v. Ocwen Fed. Bank (In re Biggs),* 377 F.3d 515, 519 (6th Cir. 2004), the United States Court of Appeals for the Sixth Circuit applied Tennessee law, including *Crim,* in holding (in the context of a deed of trust) that an acknowledgment was defective because it had a blank where the names of the trustors should have been inserted. Unlike the acknowledgment at issue in *Biggs* and similar cases in which the acknowledgment entirely lacked the name of the party making it (*see, e.g., Geygan v. World Savs. Bank, FSB (In re Nolan),* 383 B.R. 391, 396 (6th Cir. BAP 2008)), here the Acknowledgment arguably contained too much, not too little, information.

The Court, therefore, finds *Kazmaier* to be a better guidepost than *Crim* or *Gru-*

*seck* in predicting how the Ohio Supreme Court would rule if presented with the same fact pattern before the Court here. The Court accordingly concludes that the Ohio Supreme Court would, if faced with the issue, hold that the Mortgage was validly executed and acknowledged as to Mr. Ingersoll's interest in the Property.

## VI. Conclusion

For the foregoing reasons, the Court **DENIES** the Motion and **GRANTS** the Cross–Motion. The Court will enter judgment in favor of National City and against the Trustee on Counts I and II of the Complaint. Count III is dismissed because (1) the Trustee is not entitled to the relief requested—the proposed sale of the Property—given the Court's grant of summary judgment in favor of National City on Counts I and II of the Complaint, and (2) as set forth in footnote 1, the Trustee has provided no basis for the alternative relief requested. The Court will enter a separate judgment entry in accordance with this memorandum opinion.

**IT IS SO ORDERED.**