**In re Charles Leroy LACY, Debtor.**

**Larry J. McClatchey, Chapter 7 Trustee, Plaintiff**

**v.**

**GMAC Mortgage, LLC, et al., Defendants.**

**Bankruptcy No. 09–62491.**
**Adversary No. 10–2075.**

United States Bankruptcy Court, S.D. Ohio, Eastern Division at Columbus.

Nov. 29, 2012.

Amelia A. Bower, Columbus, OH, for Defendants.

Larry J. McClatchey, Columbus, OH, Pro se.

Christy Prince, Kegler, Brown, Hill & Ritter, LPA, Columbus, OH, for Plaintiff.

Robin S. Stith, Columbus, OH, for Debtor.

## MEMORANDUM OPINION ON TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

JOHN E. HOFFMAN, JR., Bankruptcy Judge.

### I. Introduction

Acting pursuant to a valid power of attorney, Gina Marie Iacuzzo ("Ms. Iacuzzo") signed a mortgage on behalf of Charles L. Lacy ("Mr. Lacy"). Several years later, Mr. Lacy filed a Chapter 7 petition, and the trustee appointed in his bankruptcy case, Larry J. McClatchey ("Trustee"), commenced this adversary proceeding seeking to avoid the mortgage on the basis that the notary public failed to certify that Ms. Iacuzzo acknowledged her signature. In his motion for summary judgment ("Motion") (Doc. 26), the Trustee contends that this failure rendered the recording of the mortgage ineffective to provide constructive notice to a subsequent bona fide purchaser, such as a trustee having the rights and powers conferred by 11 U.S.C. § 544(a)(3).[1] In response, GMAC argues that the certificate of acknowledgment substantially complied with the certification requirement of Ohio law.[2] For the reasons explained below, the Court concludes that there was not substantial compliance with the certification requirement and that the Trustee therefore is entitled to summary judgment.

### II. Jurisdiction

The Court has jurisdiction to hear and determine this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in this district. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2).

---

1. In addition to the Motion, this matter is before the Court on other papers submitted by the parties: a reply to the Motion (Doc. 27) filed by GMAC Mortgage, LLC ("GMAC"), the assignee of the original mortgagee's interest; GMAC's supplement to its reply (Doc. 28); the Trustee's reply to GMAC (Doc. 29); the Trustee's citation of supplemental authority (Doc. 30); the Trustee's citation of additional supplemental authority (Doc. 35); the Trustee's supplemental brief (Doc. 38); and GMAC's reply to that brief (Doc. 39). The Court also heard oral argument on the matter.

2. Where, as here, the Bankruptcy Code "does not specifically address an issue that arises in bankruptcy, the bankruptcy court looks to state law, to the extent that it does not conflict with the [B]ankruptcy [C]ode[.]" *Reinhardt v. Vanderbilt Mortg. & Fin., Inc. (In re Reinhardt),* 563 F.3d 558, 563 (6th Cir.2009) (internal quotation marks omitted). Because the mortgage at issue is on real property located in Ohio, the Court must apply Ohio law. *See Simon v. Chase Manhattan Bank (In re Zaptocky),* 250 F.3d 1020, 1024 (6th Cir.2001) ("Since this mortgage concerns real property located in Ohio, this inquiry is governed by Ohio law.").

## III. Background

The material facts of this case are not disputed. On June 26, 2005, Mr. Lacy executed a special power of attorney ("Power of Attorney")[3] appointing Ms. Iacuzzo as his attorney-in-fact for the purpose of purchasing and granting a mortgage on the real property located at 2303 Shrewsbury Road, Columbus, Ohio ("Property").[4] The Power of Attorney authorized Ms. Iacuzzo:

> to sign, execute and deliver and acknowledge any and all documents necessary to purchase the [Property], including, but not limited to, the signing of real estate purchase contracts, HUD–1 forms, Affidavits, Closing Statements, Notes, Mortgages, or inspection reports. Giving and granting unto [Ms. Iacuzzo] full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises as fully to all intents and purposes as I/we might or could do if personally present, hereby ratifying and confirming that [Ms. Iacuzzo] shall lawfully do or cause to be done by virtue of these presents.

Power of Attorney at 1. Mr. Lacy signed and acknowledged the Power of Attorney before a notary public, and the Power of Attorney was recorded with the Franklin County Recorder ("Recorder") on July 19, 2005. The Trustee has not challenged the validity of the Power of Attorney.

The Property was conveyed to Mr. Lacy by deed dated June 29, 2005. To finance the purchase of the Property, Mr. Lacy obtained a loan secured by a mortgage also dated June 29, 2005 ("Mortgage").[5] The Mortgage identified Mr. Lacy as the mortgagor:

> (B) "Borrower" is CHARLES L. LACY , UNMARRIED

> Borrower is the mortgagor under this Security Instrument.

Mortg. at 1.

Ms. Iacuzzo signed the Mortgage on Mr. Lacy's behalf and noted on the signature line that she was doing so:

> BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument (including but not limited to the Master Mortgage Form) and in any Rider executed by Borrower and recorded with it If for any reason, the Master Mortgage Form shall not be deemed a part of this Security Instrument, this four (4) page instrument, plus any Rider(s) and attached legal description shall stand by itself as a mortgage document, binding on the Borrower for the benefit of EQUITABLE MORTGAGE CORPORATION

> its successors and assigns.

> JUN 2 9 2005

> BORROWER – CHARLES L. LACY, BY, GINA MARIE IACUZZO
> HIS ATTORNEY IN FACT DATE –

Mortg. at 3.

On the next page, the certificate of ac-

<hr>

3. A copy of the Power of Attorney is attached as Exhibit 1 to the Trustee's amended complaint ("Amended Complaint") (Doc. 12).

4. The Trustee sold the Property pursuant to an order of the Court and is holding the net sale proceedings pending the outcome of this adversary proceeding.

5. A copy of the Mortgage is attached as Exhibit 2 to the Amended Complaint.

knowledgment on the Mortgage ("Certificate of Acknowledgment") states as follows:

State of OHIO
County of FRANKLIN

The foregoing instrument was acknowledged before me this JUNE 29, 2005 (date) by CHARLES L. LACY , U

(name of person(s) acknowledged).

Notary Public

My commission SHANE F. DRYDEN
 NOTARY PUBLIC, STATE OF OHIO
 MY COMMISSION EXPIRES 03-08-09

Mortg. at 4. The Mortgage was filed with the Recorder on July 19, 2005, shortly after the Power of Attorney was recorded.[6]

## IV. Legal Analysis

### A. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure ("Civil Rule(s)"), made applicable in this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a).[7] "On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Ricci v. DeStefano*, 557 U.S. 557, 129 S.Ct. 2658, 2677, 174 L.Ed.2d 490 (2009) (internal quotation marks omitted). A dispute is genuine only if it is "based on evidence upon which a reason-

---

**6.** The first page of the Mortgage describes Mr. Lacy as "Unmarried." The letter "U" in the word "Unmarried" appears in the Certificate of Acknowledgment, which states that the Mortgage was acknowledged by "Charles L. Lacy, U." This suggests that Mr. Lacy's name was copied from the first page of the Mortgage into the Certificate of Acknowledgment by someone who may have been unaware that Ms. Iacuzzo was going to sign the Mortgage on Mr. Lacy's behalf. The Mortgage states that it was prepared by a representative of Equitable Mortgage Corporation, the original lender.

**7.** Pursuant to an amendment to Civil Rule 56 that became effective on December 1, 2010 (after this adversary proceeding was commenced), the summary judgment standard now appears in Civil Rule 56(a) rather than, as it formerly did, Civil Rule 56(c). *See* Fed. R.Civ.P. 56 Advisory Committee Notes (2010 Amendments) ("Subdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c)...."). The Court is citing the amended rule given that application of "the amended version of [Civil] Rule 56 in this case is just and practicable and would not work a manifest injustice, because the amendments do not change the summary judgment standard or burdens." *Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 782 n. 4 (1st Cir.2011); *see also Martinez v. Hutton (In re Harwell)*, 628 F.3d 1312, 1316–17 n. 4 (11th Cir.2010) ("Amendments to the Federal Rules of Civil Procedure govern proceedings after the date they are effective in an action then pending unless the Supreme Court specifies otherwise or the court determines that applying them in a particular action would be infeasible or work an injustice. Fed.R.Civ.P. 86(a). We apply the language of Rule 56 as amended.").

able [finder of fact] could return a [judgment] in favor of the non-moving party." *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 270 (6th Cir.2009). And a "factual dispute concerns a 'material' fact only if its resolution might affect the outcome of the suit under the governing substantive law." *Id.*

## B. The Requirements for the Proper Execution of a Mortgage

■ Section 5301.01(A) of the Ohio Revised Code establishes the requirements for the proper execution of a mortgage: The mortgagor must sign the mortgage and acknowledge the signature before an authorized public official, such as a notary public, and the official must certify the acknowledgment and subscribe his or her name to the certificate of acknowledgment. *See Rhiel v. Huntington Nat'l Bank (In re Phalen)*, 445 B.R. 830, 839 (Bankr. S.D.Ohio 2011). Shane Dryden, a notary public, subscribed his name to the Certificate of Acknowledgment, satisfying the subscription requirement.[8] Acting in accordance with the Power of Attorney, Ms. Iacuzzo signed the Mortgage on behalf of Mr. Lacy, satisfying the signature requirement. *See Drown v. Nat'l City Bank (In re Ingersoll)*, 403 B.R. 505, 510 (Bankr. S.D.Ohio), *aff'd*, 420 B.R. 414 (6th Cir. BAP 2009), *aff'd*, 433 Fed.Appx. 367 (2011) (explaining the statutory bases under Ohio law for concluding that the signature requirement is satisfied if a mortgage identi-fies the principal as the mortgagor and the mortgage is signed by the attorney-in-fact pursuant to a properly executed power of attorney that was recorded prior to the recording of the mortgage).

■ That leaves two requirements: acknowledgment of the signature and certification of the acknowledgment. In the case of a mortgage granted pursuant to a power of attorney, it is the attorney-in-fact who must acknowledge his or her signature. *See id.* ("[The] signature [of the attorney-in-fact] was the only one that needed to be acknowledged...."). *See also* Ohio Rev. Code Ann. § 147.541(C)(4) (West 2012) (defining the words "acknowledged before me" to mean that, in the case of a "person acknowledging as principal" through an attorney-in-fact, the acknowledgment is made by the attorney-in-fact); Ohio Rev. Code Ann. § 147.55(D) (providing in the statutory short form of acknowledgment for an individual acting as principal by an attorney in fact that the "[t]he foregoing instrument was *acknowledged before me this (date) by (name of attorney in fact) as attorney in fact* on behalf of (name of principal).") (emphasis added); *Rogan v. CitiMortgage, Inc. (In re Hurt)*, 2011 WL 1300051, at *3 (Bankr.E.D.Ky. Mar. 31, 2011) (recognizing that the attorney-in-fact who signed the deed of trust, rather than the principals on whose behalf she signed it, was the one who acknowledged the deed of trust).[9]

---

8. "Subscription is the physical act of affixing a signature for purposes of identification." *Whitacre v. Crowe*, 972 N.E.2d 659, 662 (Ohio Ct.App.2012) (internal quotation marks omitted).

9. In *Hurt*, a certificate of acknowledgment on a deed of trust indicated acknowledgment by the principals rather than by the attorney-in-fact who had signed the deed of trust on their behalf. After one of the principals commenced a Chapter 7 case, the trustee sought to avoid the deed of trust on the debtor's interest in the property "based solely on section 47.1–15 of the Virginia Code, which prescribes that a notary public is not permitted to '[n]otarize a document if the signer is not in the presence of the notary at the time of notarization, unless otherwise authorized by law to do so.' Va.Code § 47.1–15(1)." *Hurt*, 2011 WL 1300051, at *2. The bankruptcy court entered judgment in favor of the lender, because the power of attorney signed by the debtor provided that the attorney-in-fact "would have the authority to acknowledge the

■ In order to satisfy the acknowledgment requirement, Ms. Iacuzzo must either have: (1) signed the Mortgage in the presence of the notary public, *see Wayne Bldg. & Loan Co. v. Hoover,* 12 Ohio St.2d 62, 231 N.E.2d 873, 874 (syllabus ¶ 1) (1967) ("In the absence of evidence to the contrary, one who signs his name to a document in the presence of another thereby acknowledges his signing thereof to such other."); or (2) informed the notary public that she signed it. *See Harwood v. Pappas & Assoc., Inc.,* 2005 WL 1177877, at *3 (Ohio Ct.App. May 19, 2005). Although the Trustee does not concede that Ms. Iacuzzo acknowledged her signature, he seeks summary judgment based only on the notary public's purported failure to certify any acknowledgment that Ms. Iacuzzo in fact made.

■ To satisfy the certification requirement, a notary public must certify two things: (1) that "[t]he person acknowledging appeared before him and acknowledged he executed the instrument[,]" Ohio Rev.Code Ann. § 147.53(A); and (2) that "[t]he person acknowledging was known to the person taking the acknowledgment, or that the person taking the acknowledgment had satisfactory evidence that the person acknowledging was the person described in and who executed the instrument." Ohio Rev.Code Ann. § 147.53(B). The notary public may accomplish the certification in part by using the words "acknowledged before me" or their substan-

tial equivalent, *see* Ohio Rev.Code Ann. § 147.54(C) or, as authorized in § 147.54(A) of the Ohio Revised Code, by using one of the statutory short forms of acknowledgment, each of which contains the phrase "acknowledged before me." *See* Ohio Rev.Code Ann. § 147.55.[10] When used in the context of an acknowledgment by an attorney-in-fact, this phrase means that:

(A) The person acknowledging appeared before the [notary public];

(B) He acknowledged he executed the instrument; (C) [i]n the case of ... (4)[a] person acknowledging as principal by an attorney in fact, he executed the instrument by proper authority as the act of the principal for the purposes therein stated ... [and] (D) [the notary public] either knew or had satisfactory evidence that the person acknowledging was the person named in the instrument or certificate.

Ohio Rev.Code Ann. § 147.541. The notary public also "must fill in the blank in a certificate of acknowledgment with the name or other identification of the person who is acknowledging the signature" on the mortgage. *Phalen,* 445 B.R. at 844.

## C. The Substantial Compliance Standard

■ It is well settled that the failure to satisfy the certification requirement renders the recording of a mortgage inef-

---

deed of trust" and her "acknowledgment fits within the 'unless otherwise authorized to by law to do so' exception of section 47.1–15." *Hurt,* 2011 WL 1300051, at *4. According to the court, "[d]ue to the valid power of attorney, there is no defect in the acknowledgment." *Id.* The trustee apparently did not argue, and the *Hurt* court did not reach, the separate issue of whether the attorney-in-fact's acknowledgment had been properly certified.

10. For a case in which a bankruptcy court found that words substantially equivalent to the phrase "acknowledged before me" were used in a certificate of acknowledgment, see *Hardesty v. Citifinancial, Inc. (In re Roberts),* 402 B.R. 808, 813 (Bankr.S.D.Ohio), *aff'd,* 419 B.R. 20 (6th Cir. BAP 2009), *aff'd,* 414 Fed.Appx. 761 (6th Cir.2011). In *Roberts,* the certificate of acknowledgment identified by name the persons who acknowledged their signatures. *See Roberts,* 402 B.R. at 810.

fective to provide constructive notice to a subsequent bona fide purchaser[11] and therefore makes the mortgage susceptible to avoidance by a bankruptcy trustee under § 544(a)(3).[12] *See Phalen,* 445 B.R. at 838–57. It is equally well established that the standard for determining compliance with the certification requirement is not perfection, but rather substantial compliance. *See Dodd v. Bartholomew,* 44 Ohio St. 171, 5 N.E. 866, 866 (syllabus ¶ 1) (Ohio 1886); *Smith's Lessee v. Hunt,* 13 Ohio 260, 268 (1844).

In *Smith's Lessee,* the following certificate of acknowledgment appeared on a mortgage signed by Ezekiel Folsom: "Personally appeared _____, who acknowledged that he did sign and seal the foregoing instrument, and that the same is his free act and deed. WM BURTON, *Justice of the Peace." Smith's Lessee,* 13 Ohio at 260. The Ohio Supreme Court held that the certification requirement was not met, reasoning as follows:

> Does the certificate in this case furnish any evidence of a compliance with the law? This must depend solely on the fact whether blank, and Ezekiel Folsom, the grantor, are synonymous. If Folsom is blank, and blank is Folsom, the

execution of the mortgage is complete; but as no evidence is adduced to prove these facts, we know of no rule of law which will authorize us to infer that Ezekiel Folsom, the grantor, is just nobody at all. . . .

*Id.* at 268–69. According to the *Smith's Lessee* court, a mortgage deed does not transfer an interest valid as against a subsequent bona fide purchaser "unless executed, substantially at least, in pursuance of the requisitions of the statute[,] which . . . require[s] every species of deed to be acknowledged by the grantor, and such acknowledgment to be certified by the magistrate or person before whom it is made." *Id.*

The certificate of acknowledgment in *Dodd* stated that "the above-named Charles *B.* Clark and *Mary* Clark, his wife, the grantors in the above-named instrument," *Dodd,* 5 N.E. at 866, acknowledged the signing of the mortgage deed when, in fact, the instrument was signed by Charles *A.* Clark and *Sarah* Clark. Despite those discrepancies, the *Dodd* court found that the certificate of acknowledgment was not defective, holding that "[w]here an error occurs in the name of a party to a written instrument, apparent

---

**11.** In this regard, Ohio Revised Code § 5301.25(A) provides as follows:

> All . . . instruments of writing properly executed for the conveyance or encumbrance of lands, tenements, or hereditaments, other than as provided in division (C) of this section and section 5301.23 of the [Ohio] Revised Code, shall be recorded in the office of the county recorder of the county in which the premises are situated. *Until so recorded or filed for record, they are fraudulent insofar as they relate to a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of that former deed, land contract, or instrument.*

Ohio Rev.Code Ann. § 5301.25(A) (emphasis added).

**12.** Under this section of the Bankruptcy Code:

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—. . . (3) *a bona fide purchaser of real property, other than fixtures, from the debtor,* against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3) (emphasis added).

upon its face, and, from its contents, susceptible of correction, so as to identify the party with certainty, such error does not affect the validity of the instrument." *Id.* at 866 (syllabus ¶ 1). *Smith's Lessee* was distinguishable, because in that case "the name of the grantor was left blank in the certificate of acknowledgment, and did not, as in [*Dodd* ], refer to him as the above-named grantor." *Id.* at 868.[13] In other words, in *Dodd* the reference in the certificate of acknowledgment to the "grantors in the above-named instrument"—language that indisputably referred to the persons who acknowledged their signatures—caused the mortgage deed to be in substantial compliance with the certification requirement. *See Campbell v. Krupp,* 195 Ohio App.3d 573, 961 N.E.2d 205, 218 (2011) ("In [*Dodd* and certain other cases], the acknowledgment clause declared that the notary was certifying the acknowledgment of 'the above named grantor.' Thus, even though the name of the grantor was wrong in the acknowledgment clause, reference could still be made within the document to ascertain the true identity of the person acknowledging the instrument.").

*Smith's Lessee* and *Dodd* "are at the heart of the substantial compliance standard which is still used today." *Noland v. Burns (In re Burns),* 435 B.R. 503, 511 (Bankr.S.D.Ohio 2010). An Ohio court has summarized the analysis to be applied following *Smith's Lessee* and *Dodd* in this way: "A close reading of the cases shows that certificates of acknowledgment substantially comply when they in some way identify the person making the acknowledgment." *Campbell,* 961 N.E.2d at 216.

## D. Absence of Controlling Ohio Authority

In *Smith's Lessee,* the certificate of acknowledgment was completely blank where the name of the person who acknowledged the signature on the mortgage should have appeared, and in *Dodd* the certificate contained language ("the grantors in the above-named instrument") that without question accurately described the persons who acknowledged the signatures on the mortgage. The issue here is one that the Ohio Supreme Court did not decide in those cases and has not decided in any other case: whether a certificate of acknowledgment that identifies the principal as having acknowledged the signature on a mortgage signed by an attorney-in-fact adequately identifies the attorney-in-fact as the person who made the acknowledgment.

 Because the Ohio Supreme Court has not addressed the issue of substantial compliance in this precise context, the Court must predict how that court would rule. *See Meridian Mut. Ins. Co. v. Kellman,* 197 F.3d 1178, 1181 (6th Cir.1999). "While engaged in this predictive process, [t]he Court must employ the appropriate [state] methodology to decide th[e] issue the way that [it] believe[s] the Supreme Court of [the state] would decide it." *Drown v. Wells Fargo Bank, N.A. (In re Scott),* 424 B.R. 315, 330 (Bankr.S.D.Ohio 2010) (internal quotation marks omitted), *aff'd,* 2011 WL 1188434 (S.D.Ohio Mar. 29, 2011). Furthermore, in making the prediction "the Court may rely upon analo-

---

**13.** In addition to building on *Smith's Lessee* to develop what became known as the substantial compliance standard, the Ohio Supreme Court in *Dodd* enunciated the principle that all the parts of real-estate instruments "are to be construed together, and the meaning ascertained from a consideration of each and every part...." *Dodd,* 5 N.E. at 867. The issue before the Court, then, is whether, when construing the Mortgage and the Certificate of Acknowledgment together, there has been substantial compliance with the certification requirement of Ohio law.

gous cases and *relevant dicta* in the decisional law of the State's highest court, opinions of the State's intermediate appellate courts to the extent that they are persuasive indicia of the State Supreme Court direction, and persuasive opinions from other jurisdictions, including the majority rule." *In re Kimble,* 344 B.R. 546, 552 (Bankr.S.D.Ohio 2006) (internal quotation marks omitted). In addition, "[w]here an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. Am. Tel. & Tel. Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940). *See also Rhiel v. Cent. Mortg. Co. (In re Kebe),* 469 B.R. 778, 788 (Bankr. S.D.Ohio 2012). "Other persuasive data include the state's supreme court dicta, restatements of law, law review commentaries, and the majority rule among other states." *Kurczi v. Eli Lilly & Co.,* 113 F.3d 1426, 1429 (6th Cir.1997) (internal quotation marks omitted).

## E. Parties' Reliance on Inapposite Case Law

In making his case that the Certificate of Acknowledgment fails to substantially comply with the certification requirement and that the Mortgage is therefore avoidable, the Trustee contends that certain cases control the outcome here, as does GMAC in arguing in favor of substantial compliance. To make clear the grounds for its decision, the Court will first address the inapposite cases on which the parties rely before discussing the authorities that support the arguments for and against

substantial compliance on the facts of this case.

### 1. Inapposite Decisions Relied on by the Trustee

To support his argument that the Certificate of Acknowledgment is defective despite the fact that it includes Mr. Lacy's name and therefore is not completely blank, the Trustee relies in part on three decisions—*Campbell, Phalen* and *C.I.T. Corp. v. Hungerford,* 123 Conn. 438, 196 A. 151 (1937)—in which a certificate of acknowledgment that was not completely blank was held to be defective.

In *Campbell,* the Ohio court of appeals invalidated a power of attorney based on its certificate of acknowledgment.[14] In that case, both the grantor of the power of attorney (William F. Fisher) and the grantee (Penny M. Krupp, Mr. Fisher's daughter) signed the power of attorney even though "[i]n ordinary practice the grantee, the agent, does not sign the POA, which is signed by the grantor, the principal." Doc. 38 at 4 n. 2. The name of the grantor, Mr. Fisher, should have appeared in the certificate of acknowledgment, but the notary public included only the name of the grantee, Ms. Krupp, stating as follows:

On January 10, 2003 before me, *Penny M. Krupp,* appeared to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

the mortgages were purportedly granted. *See Campbell,* 961 N.E.2d at 220.

*Campbell,* 961 N.E.2d at 214. Like mortgages, powers of attorney must be signed, acknowledged and certified as provided in Ohio Revised Code § 5301.01. *See* Ohio Revised Code Ann. § 1337.01. Because the certificate of acknowledgment included only Ms. Krupp's name, the court of appeals held that "no information exists in the acknowledgment clause that could identify Fisher as the person acknowledging the instrument" and "the power of attorney [therefore] fails to substantially comply with the requirements of [Ohio Revised Code § ] 5301.01 and is invalid." *Campbell,* 961 N.E.2d at 218. The *Campbell* court's holding makes sense, but is irrelevant here. In order for Mr. Fisher to make Ms. Krupp his attorney-in-fact, he had to sign the power of attorney and had to acknowledge his signature; Ms. Krupp could not take those steps for him. Naming Ms. Krupp in the certificate of acknowledgment, therefore, could not be construed as a certification that Mr. Fisher had acknowledged his signature. In addition, Ms. Krupp had also signed the power of attorney, making it appear that the certificate of acknowledgment certified nothing more than that she had acknowledged her signature.

Given that only Mr. Lacy's name appears in the Certificate of Acknowledgment, the *Campbell* decision would be relevant, perhaps, if Ms. Iacuzzo had been the mortgagor, Mr. Lacy had been the mortgagee and both had signed the mortgage (even though the mortgagee typically would not do so). If that were the case, then, as in *Campbell,* the grantee would have been named in the Certificate of Acknowledgment. But those are not the facts before the Court. *Campbell* is not on point, because the only person who signed the Mortgage was Ms. Iacuzzo, who was acting as Mr. Lacy's agent to grant a mortgage to a third party.

Before the debtors in *Phalen* commenced their Chapter 7 case, they both signed a mortgage on which the certificate of acknowledgment identified only one of them as having acknowledged the signing of the mortgage. On those facts, the Court—as have several other courts under similar circumstances—treated the certificate of acknowledgment as blank with respect to the mortgage on the interest in the property held by the spouse who was not identified in the certificate of acknowledgment. *See Phalen,* 445 B.R. at 841 n. 3 (citing cases). That was appropriate because "when only one of two borrowers is identified in the certificate of acknowledgment, the Court and subsequent purchasers cannot determine whether the other borrower acknowledged his or her signature before the notary public or signed the instrument at a different time, if at all." *Id.* at 852. In other words, in *Phalen* two persons signed the mortgage while only one of them was identified in the certificate of acknowledgment. By contrast, in this adversary proceeding only one person (the attorney-in-fact) signed the Mortgage and only one (the principal) was named in the Certificate of Acknowledgment. The question is whether naming the principal adequately identifies the attorney-in-fact as the person who acknowledged the signature on the Mortgage. *Phalen* does not help answer that question.

At issue in *Hungerford* was the validity of a certificate of acknowledgment on a contract to which Owen Motors, Inc. ("Owen Motors") was a party. The contract was signed and acknowledged by Hans C. Owen, Jr. as secretary of Owens Motors. The notary public, however, had prepared the certificate of acknowledgment on the contract believing that Hans C. Owen, Sr., the president of Owen Motors, would execute the contract on behalf of the company; the certificate of acknowledgment, therefore, stated that there "per-

sonally appeared H.C. Owen ... President of Owen Motors, Inc." There was no question that "[t]hrough an oversight after Owen, Jr., had signed them, [the notary public] neglected to substitute 'Sec'y.' for 'Pres.' in the acknowledgment clause as she had intended" and that "[b]oth she and Owen, Jr., acted in good faith and without intent to misstate the facts." *Hungerford,* 196 A. at 154. Nonetheless, the Connecticut court held that "the notary's certificate was incorrect and insufficient under the statute" because "[o]n the face of the instrument it appeared that, while the contract was signed by 'Hans C. Owen, Jr. Sec'y,' it was acknowledged by an entirely different person and officer, 'H. C. Owen' as 'President.'" *Id.* "Under the statute, not merely must there be a proper acknowledgment, but there must also be a correct certificate of that acknowledgment attached to the contract when filed for record...." *Id.* In *Hungerford,* however, there was no principal-agent relationship between the person who signed the contract and the person identified in the certificate of acknowledgment.

Another decision on which the Trustee relies is *Ingersoll.* Although the result was different in *Ingersoll* than the Trustee seeks here (the mortgage was not avoided), the Trustee relies on the Court's reasoning in that case to support avoidance of the Mortgage in this adversary proceeding. For the reasons explained below, however, *Ingersoll* in and of itself does not carry the day for the Trustee. In *Ingersoll,* Shirley Ingersoll signed a mortgage on property that she and her husband, Dallas Ingersoll, owned jointly with right of survivorship. Mrs. Ingersoll signed the mortgage both on her own behalf and as attorney-in-fact for Mr. Ingersoll, who was terminally ill. The certificate of acknowledgment on the mortgage identified both spouses as having personally appeared and acknowledged their signatures before

the notary public, when in fact only Mrs. Ingersoll had done so. More than two years later, Mrs. Ingersoll filed a Chapter 7 bankruptcy case. Based on the inaccurate statement in the certificate of acknowledgment that Mr. Ingersoll had personally appeared and acknowledged his signature, the trustee sought to avoid the mortgage as to the one-half interest in the property once owned by Mr. Ingersoll, who was at that point deceased. The Court held that the signature of Mrs. Ingersoll "was the only one that needed to be acknowledged, and her acknowledgment was the only one that needed to be certified." *Ingersoll,* 403 B.R. at 510. The Court so held because, "[b]y virtue of her power of attorney, [the debtor's] signature on the mortgage ... mortgaged [the husband's] interest in the property as fully as if he had executed the mortgage in person." *Ingersoll,* 403 B.R. at 506.

As to the trustee's argument that the mortgage was avoidable because Mr. Ingersoll's name was included in the certificate of acknowledgment even though he had not personally signed the mortgage, the Court determined that Mr. Ingersoll's name "was surplusage and, as such, does not affect the validity" of the mortgage. The Court relied for that proposition on *Shults v. Moore,* 22 F. Cas. 51 (C.C.D.Ohio 1839), which held that "[e]very thing said in the certificate ... [that] was not required for the due authentication of the acknowledgment, *may be rejected as surplusage,* if enough appear[s] to authenticate the act." *Shults,* 22 F.Cas. at 52 (emphasis added). As the Trustee points out in the current case, if Mr. Lacy's name were stricken from the Certificate of Acknowledgment, only a blank acknowledgment would remain. The Court, however, did not hold in *Ingersoll* that the principal's name *must* be stricken as surplusage, only that it *may*

be stricken if it is unnecessary. Moreover, *Ingersoll* did not address the question presented in this adversary proceeding, which is whether including only the name of the principal in the certificate of acknowledgment certifies that the attorney-in-fact acknowledged his or her signature.

## 2. Inapposite Decisions Relied on by GMAC

GMAC relies on several cases in which the certificate of acknowledgment was held to be in substantial compliance with Ohio law. In two of those cases, however, the certificate of acknowledgment identified the person who acknowledged the signature on a mortgage either by name or by a description that unambiguously referred to that person. In *Adm'r of Veterans Affairs v. City Loan Co.*, 1985 WL 9128 (Ohio Ct.App. May 7, 1985), the mortgage correctly stated that Betty S. Weber was the mortgagor and that The City Loan Company was the mortgagee, but the certificate of acknowledgment represented that "Before me, a notary public in and for said County, personally appeared *the above named mortgagor(s) The City Loan Company* who acknowledged that (*he*)(*she*) (*they*) did sign the foregoing instrument, and that the same is (*his*)(*her*) (*their*) free act and deed ..." *Veterans Affairs*, 1985 WL 9128, at *1 (emphasis added). That is, although the certificate of acknowledgment included the name of the mortgagee (The City Loan Company), it also correctly stated that "the above named mortgagor(s)" (*i.e.*, Ms. Weber) appeared. *Id.* In *Citifinancial, Inc. v. Howard*, 2008 WL 4193051 (Ohio Ct.App. Sept. 15, 2008), the name of the individual who signed and acknowledged his signature on the mortgage was included in the certificate of acknowledgment, but the certificate of acknowledgment incorrectly stated that he was signing on behalf of a corporation.

Because the name of the individual acknowledging was included in the certificate, the court held that the certification requirement was met. *See Citifinancial*, 2008 WL 4193051, at *4–5. Here, in contrast to *Veterans Affairs* and *Citifinancial*, the Certificate of Acknowledgment does not identify Ms. Iacuzzo by name, nor does it unambiguously refer to her.

In another case on which GMAC relies, *Huntington Nat'l Bank v. Kazmaier*, 175 Ohio App.3d 130, 885 N.E.2d 314 (2008), it was not clear that the court decided the certification issue at all. Elizabeth and Paul Kazmaier executed powers of attorney authorizing two of their children, Terrence and Timothy, to act on their behalf with respect to their property. Timothy obtained a line of credit from Huntington National Bank ("Huntington"). To secure the line of credit, he signed a mortgage in the names of his parents, followed by his own signature and the initials "POA" to indicate that he was signing pursuant to the powers of attorney. *See Kazmaier*, 885 N.E.2d at 315. According to the certificate of acknowledgment, the signatures on the mortgage were acknowledged before the notary public by Paul and Elizabeth, when in fact they had not personally appeared to sign or acknowledge the signing of the mortgage. After Elizabeth's and Paul's death, Huntington filed a complaint against Timothy for amounts owing on the line of credit and against the current co-owners of the property (Timothy and his siblings) for foreclosure of the mortgage. Huntington then filed a motion for summary judgment on its foreclosure claim, contending that there was no question of material fact on the issue of whether the parents, through Timothy, had granted Huntington a mortgage on the property. In response, Timothy's siblings argued that the mortgage was defective because the certificate of acknowledgment

stated that the signature on the mortgage was acknowledged " 'by Paul C. Kazmaier and Elizabeth Kazmaier, A.K.A. Elizabeth A. Kazmaier, husband and wife,' but the mortgage was signed only by their agent exercising the powers of attorney." *Id.* at 316. In support of its motion for summary judgment, Huntington contended that mortgage substantially complied with the requirements of § 5301.01(A), and the trial court so held. *See id.* On appeal by Timothy's siblings, the court of appeals held as follows with respect to the mortgage:

> The legal conclusion reached by appellants' expert ... was that a mortgage signed by an agent under a power of attorney does not comply with [Ohio Rev.Code Ann. § ] 5301.01. Such a conclusion flies in the face of [Ohio Rev. Code Ann. § ] 1337.01 which, as a matter of law, not fact, allows the holder of a valid power of attorney to mortgage real property. In sum, due to the fact that the powers of attorney granted to Timothy Kazmaier are valid, we must agree with the trial court in finding that the mortgage in this cause is valid.

*Id.* at 319.

In other words, the court of appeals ruled that, because the holder of a valid power of attorney may mortgage the property of his principal, and because the power of attorney held by Timothy was valid, the mortgage granted by Timothy was a valid mortgage on the property of Elizabeth and Paul and, by extension, a valid mortgage on the property in the hands of Timothy and his siblings. As heirs, the siblings were not bona fide purchasers un-

der Ohio law, *see, e.g., Wells Fargo v. Mowery,* 187 Ohio App.3d 268, 931 N.E.2d 1121, 1129 (2010), and mortgages that contain defective certificates of acknowledgment are invalid under Ohio Revised Code § 5301.25(A) only with respect to subsequent bona fide purchasers. The *Kazmaier* court, therefore, did not need to reach the issue of whether the certificate of acknowledgment on the mortgage was defective. To the extent the *Kazmaier* court made any statement regarding the validity of the certificate of acknowledgment on the mortgage—and it is not clear that the court even did so [15]—any such statement was pure dictum. Also dictum was this Court's discussion of *Kazmaier* in *Ingersoll.* As already noted, in *Ingersoll,* the certificate of acknowledgment included the correct and sufficient statement that Mrs. Ingersoll personally appeared and acknowledged her signature. Accordingly, the Court's discussion of *Kazmaier*—in which the certificate of acknowledgment on the mortgage was completely false—was not necessary to its holding.

GMAC cites *Corzin v. Bank of New York (In re Swartz),* No. 09–5026, slip op. at 8 (Bankr.S.D. Ohio June 26, 2009) for the principle that a certificate of acknowledgment is in substantial compliance with the certification requirement if the identity of the person doing the acknowledging can be determined by reference to a definition in the text of the mortgage. The principle is sound but inapplicable here. In *Swartz,* the court found substantial compliance with the certification requirement where "Mortgagors" was a defined term in the

---

**15.** As the Trustee correctly points out, "[t]he only issues given serious consideration in [*Kazmaier*] are whether the power of attorney was valid and whether Tim Kazmaier, as agent for his parents, could effectively mortgage property of his parents for his personal debt." Doc. 29 at 4. "Without any further analysis of relevant Ohio statutes and case law on the certification issue, the court ... equated the validity of the power of attorney with the validity of the mortgage, eschewing any consideration of the certification requirements." *Id.* at 5

mortgage, the "Mortgagors" personally signed the mortgage, and the certificate of acknowledgment referenced "the above named Mortgagors," thereby making clear who was acknowledging the signatures on the mortgage. *See id.* at \*4, 8. By contrast, there is nothing in the Mortgage that defines "Charles L. Lacy" to mean Ms. Iacuzzo.

Finally, GMAC relies on *Argent Mortg. Co. v. Drown (In re Bunn)*, 578 F.3d 487 (6th Cir.2009) in support of its argument that the Trustee does not qualify as a bona fide purchaser for purposes of § 544(a)(3), because he had inquiry notice of the Mortgage despite any defect in the Certificate of Acknowledgment. *See* Doc. 39 at 7. The Court has previously rejected this argument, *see Terlecky v. Chase Home Fin., LLC (In re Sauer)*, 417 B.R. 523, 539–540 (Bankr.S.D.Ohio 2009), and there is no need to re-plow that ground here.

### F. The Argument that the Certificate of Acknowledgment Substantially Complies with the Certification Requirement

Although the cases just discussed do not support GMAC's position, another decision that GMAC cites, *Mid–American National Bank & Trust Co. v. Gymnastics International, Inc.*, 6 Ohio App.3d 11, 451 N.E.2d 1243 (1982), arguably does. As explained below, a reasonable argument can be made that the Certificate of Acknowledgment identifies Ms. Iacuzzo as the person who acknowledged the signature on the Mortgage with a degree of certainty close to that present in *Mid–American.* There, Gymnastics International, Inc. ("Gymnastics"), acting through its president and secretary-treasurer, granted a mortgage in favor of Mid–American National Bank & Trust Co. ("Mid–American"). The certificate of acknowledgment on the mortgage stated that before the notary public there "personally appeared the above named grantors and mortgagors, Gymnastics International Inc., an Ohio Corporation, and acknowledged the signing and sealing of the foregoing conveyance to be their voluntary act and deed, for the uses and purposes therein expressed." *Mid–Am. Nat'l Bank*, 451 N.E.2d at 1244. That is, even though the mortgage was signed and acknowledged by Gymnastic's president and secretary-treasurer on behalf of the corporation, the certificate of acknowledgment failed to name the corporate officers and instead stated that "the above named grantors and mortgagors, Gymnastics International Inc." acknowledged the signing. *See id.* at 1245.

After Gymnastics defaulted on loans secured by the mortgage, Mid–American made all the parties with an interest in the mortgaged property defendants to a foreclosure action. Certain of the defendants challenged the validity of the mortgage based on its certificate of acknowledgment. The trial court held that the certificate of acknowledgment substantially complied with Ohio law, and one of the defendants appealed. On appeal, the defendant-appellant took the position that the certificate of acknowledgment was not in substantial compliance, pointing out that it did not follow the statutory short form.[16] The court of appeals rejected the argument that the failure to follow the short form rendered the certificate of acknowledgment defective, finding that the form was

---

16. For a corporate mortgagor, the statutory short form of acknowledgment provides that "[t]he foregoing instrument was acknowledged before me this (date) by (name of officer or agent, title of officer or agent) of (name of corporation acknowledging) a (state or place or incorporation) corporation, on behalf of the corporation." Ohio Rev.Code Ann. § 147.55(B).

not mandatory and that the failure to use it does not invalidate a mortgage with respect to a subsequent bona fide purchaser where there is substantial compliance with § 5301.01(A). *Id.* at 1246.[17]

The same reasoning applies here. The short form for an individual acting as principal by an attorney-in-fact is that "[t]he foregoing instrument was acknowledged before me this (date) by (name of attorney in fact) as attorney in fact on behalf of (name of principal)." Ohio Rev.Code Ann. § 147.55(D). If that form had been used, the Certificate of Acknowledgment would have read as follows: "The foregoing instrument was acknowledged before me this June 29, 2005 by Gina Iacuzzo as attorney in fact on behalf of Charles L. Lacy." Indeed, "the better practice would be to utilize the precise language in Ohio Rev.Code Ann. § 147.55, which carries the state legislature's imprimatur and would avoid future disputes of the kind that produced this litigation." *Roberts,* 414 Fed. Appx. at 764. As the Trustee concedes, though, the short form is not mandatory, and the failure to use it does not invalidate a mortgage with respect to subsequent bona fide purchasers if there has been substantial compliance with § 5301.01(A).

Regarding substantial compliance, *Mid–American* held as follows:

> Where there is a corporate mortgagor and the mortgage has been executed on behalf of the corporation by its president and by its secretary-treasurer, and the certificate of acknowledgment executed by the notary public states that the corporation, itself, is the mortgagor, and the names of the president and secre-

tary-treasurer do not appear therein, the acknowledgment is not defective because it fails to state the names of the officers of the corporation who signed the mortgage; said acknowledgment substantially complies with the essential requisites of [Ohio Rev.Code § ] 5301.01.

*Mid–Am.,* 451 N.E.2d at 1243–44 (syllabus).

This holding is consistent with the view that the Certificate of Acknowledgment substantially complies with the certification requirement of Ohio law. In *Mid–American,* the court held that the certificate of acknowledgment substantially complied with Ohio Rev.Code § 5301.01 even though the certificate stated that the corporate mortgagor, rather than the officers who signed the mortgage on the corporation's behalf, acknowledged the signatures on the mortgage. *See Mid–Am. Nat'l Bank,* 451 N.E.2d at 1243–44 (syllabus). Here, the Certificate of Acknowledgment states that the principal (Mr. Lacy), rather than the attorney-in-fact who signed the mortgage on his behalf (Ms. Iacuzzo), acknowledged the signature on the Mortgage. For purposes of executing documents such as notes and mortgages, an authorized corporate officer is an agent for the corporation, *see Aungst v. Creque,* 72 Ohio St. 551, 74 N.E. 1073, 1073 (1905), just as an attorney-in-fact acting pursuant to a valid power of attorney is an agent for his or her principal. *See In re Estate of Kirkland,* 175 Ohio App.3d 73, 885 N.E.2d 271, 277 (2008). Thus, in the holding of *Mid–American* it makes sense to substitute "principal" for "corporation" and "at-

---

**17.** That the statutory short forms set forth in § 147.55 are not mandatory is evidenced by the prefatory language of that provision:

The forms of acknowledgment set forth in this section may be used and are sufficient for their respective purposes under any section of the Revised Code. The forms shall be

known as "statutory short forms of acknowledgment" and may be referred to by that name. The authorization of the forms in this section does not preclude the use of other forms.

Ohio Rev.Code Ann. § 147.55.

torney-in-fact" for "officers of the corporation" and, if those substitutions are made, the holding applies equally here.

Because *Smith's Lessee* involved the "total omission" of any description of the person acknowledging the signature, *Mid–American*, 451 N.E.2d at 1245, the court declined to follow that case and instead applied the rule of law established in *Dodd*: " '[w]here an error occurs in the name of a party to a written instrument, apparent upon its face, and, from its contents, susceptible of correction, so as to identify the party with certainty, such error does not affect the validity of the instrument. . . .' " *Id.* (quoting *Dodd* ). Following *Dodd*, the *Mid–American* court found that "[i]t is . . . apparent that the notary public's certification, that the corporation acknowledged the signing of the foregoing conveyance voluntarily for the uses and purposes therein expressed, refers to the officers' actions of acknowledgment." *Mid–Am.*, 451 N.E.2d at 1246. Perhaps it was clear to the court that the certificate of acknowledgment referenced the officers because "it [was] apparent from the mortgage that the corporation, a legal fiction, must be represented by officers of that corporation." *Burns*, 435 B.R. at 511.

This reasoning can be extended to support the conclusion that the Certificate of Acknowledgment substantially complies with the certification requirement. As was the notary public's certification in *Mid–American*, the Certificate of Acknowledgment is incomplete, but not entirely blank. It refers to Mr. Lacy, who is identified as the mortgagor (or "Borrower") both on the first page of the Mortgage and in the signature block. The signature block includes Ms. Iacuzzo's signature on behalf of Mr. Lacy, followed by the designation "P.O.A." and the statement that she is Mr. Lacy's "Attorney in Fact." Thus, based on

a review of the Mortgage and the Certificate of Acknowledgment, it arguably is just as apparent that Ms. Iacuzzo acknowledged her signature on behalf of Mr. Lacy as it was that the corporate officers acknowledged theirs on behalf of the corporation in *Mid–American.*

## G. The Argument that the Certificate of Acknowledgment Does Not Substantially Comply with the Certification Requirement

On the other hand, although the *Mid–American* court found it was "apparent that the notary public's certification . . . refers to the officers' actions of acknowledgment[,]" *Mid–American*, 451 N.E.2d at 1246, the court did not explain why this was so. Perhaps it was apparent for the reason set forth above—because it requires an individual to grant a mortgage on behalf of a corporation. If so, then *Mid–American* is distinguishable on the basis that, unlike a corporation, an individual such as Mr. Lacy can sign a mortgage on his own behalf even if he has granted a power of attorney to another to do so. Perhaps the certificate of acknowledgment's use of the plural personal pronoun "their" (the certificate stated that Gymnastics "acknowledged the signing and sealing of the foregoing conveyance to be their voluntary act and deed," *Mid–American*, 451 N.E.2d at 1244) provided a basis for the court's conclusion that the certificate of acknowledgment referred to the officers. *Cf. Menninger v. First Franklin Fin. Corp. (In re Fryman)*, 314 B.R. 137, 139 (Bankr.S.D.Ohio 2004) (holding that a certificate of acknowledgment substantially complied with the certification requirement where it contained only one of the grantors' names but included the pronouns "they" and "their").

Other factors may have informed the court's decision. Recently, Ohio's Sixth

District Court of Appeals—the same court that decided *Mid–American*—suggested that the reference in that case to the "above named grantors" provided the evidence the court needed to find substantial compliance:

> In [*Mid–American* ], the acknowledgment clause declared that the notary was certifying the acknowledgment of "the above named grantor." Thus, even though the name of the grantor was wrong in the acknowledgment clause, reference could still be made within the document to ascertain the true identity of the person acknowledging the instrument. In contrast, here the acknowledgment clause refers only to Penny M. Krupp. It does not state that "the above named grantor" acknowledged the document, nor does it even use plural pronouns to show that there was more than one person acknowledging.

*Campbell,* 961 N.E.2d at 218. If the certificate of acknowledgment at issue in *Campbell* had referenced "the above named grantor," it would have been in substantial compliance with the certification requirement, because the grantor was Mr. Fisher, and he was the person whose acknowledgment needed to be certified. By contrast, the statement in the certificate of acknowledgment at issue in *Mid–American* that there "personally appeared the above named grantors" arguably did not refer to the corporate officers, because it was Gymnastics itself that was the grantor. Nonetheless, because the same court that decided *Mid–American* later expressed the view that it was the reference in that case to the "above named grantors" that made all the difference, the Court concludes that the narrow holding of *Mid–American* should not be extended to the facts of this adversary proceeding.

In any event, the *Mid–American* court set forth in its syllabus a specific holding:

where a mortgage is executed on behalf of a corporation by two corporate officers and the certificate of acknowledgment states that the corporation acknowledged the signatures, the certificate is not defective for failing to include the names of the officers. *See Mid–Am. Nat'l Bank,* 451 N.E.2d at 1243–44 (syllabus). If the Court were to apply that holding to the facts of this case, it would be establishing a more general rule of law, as follows: where a mortgage is executed on behalf of a principal by an attorney-in-fact and the certificate of acknowledgment states that the principal acknowledged the signature, the certificate is not defective for failing to include the name of the attorney-in-fact. This is a rule of law that neither the *Mid–American* court nor any other Ohio court has ever announced, and the lack of a clear explanation in *Mid–American* for what was a very specific holding counsels against extending the decision.

This is especially true in light of the rule of law the court was applying in *Mid–American—Dodd's* general rule that "[w]here an error occurs in the name of a party to a written instrument, apparent upon its face, and, from its contents, susceptible of correction, so as to identify the party with certainty, such error does not affect the validity of the instrument." *Dodd,* 5 N.E. at 866 (syllabus ¶ 1). As already noted, when a mortgage is signed by an attorney-in-fact on behalf of a principal, the attorney-in-fact is the one who acknowledges the signature, and the notary public must certify that the attorney-in-fact did so. Thus, under *Dodd,* in order to find substantial compliance with the certification requirement, the Court would have to determine, based on a review of the Mortgage and the Certificate of Acknowledgment, that the notary public certified that Ms. Iacuzzo was the person who acknowledged the signature on the Mortgage on behalf of Mr. Lacy.

 The Court is unable to make that determination with the requisite degree of certainty in light of the following unassailable premise: Mr. Lacy and Ms. Iacuzzo are not the same person. In *Smith's Lessee*, the Ohio Supreme Court stated that the determination of whether the certification requirement was met "depend[s] solely on the fact whether blank, and Ezekiel Folsom, the grantor, are synonymous," *Smith's Lessee*, 13 Ohio at 268, reasoning that "[i]f Folsom is blank, and blank is Folsom, the execution of the mortgage is complete...." *Id.* Applying that reasoning here, the question becomes whether Mr. Lacy is Ms. Iacuzzo and Ms. Iacuzzo is Mr. Lacy. The answer, of course, is no. Now, it is true that, by virtue of the Power of Attorney, Ms. Iacuzzo was Mr. Lacy's agent for purposes of signing and acknowledging the Mortgage. During oral argument, GMAC argued strenuously that this meant that Ms. Iacuzzo's name should be read wherever the name of Mr. Lacy appears. However, it offered no case law or other authority that would support this proposition. Indeed, if the Power of Attorney had that effect, then Ms. Iacuzzo's name could, for example, be read into the Mortgage where Mr. Lacy is identified as the mortgagor. But that would be inconsistent with the requirements of Ohio law. *See* Ohio Rev.Code Ann. § 1337.02 ("A ... mortgage ... made by virtue of a power of attorney, must contain the name of the ... mortgagor ... and shall ... mortgage ... the interest of such ... mortgagor ... as fully as if such ... mortgage ... were executed by such ... mortgagor ... in person.").[18] Using the language of *Smith's*

*Lessee*, the Power of Attorney does not make Ms. Iacuzzo "synonymous" with Mr. Lacy, and Ms. Iacuzzo is not Mr. Lacy any more than she would be "blank" if this were a blank acknowledgment case. Accordingly, the rationale and holding of *Smith's Lessee* strongly suggest that the Certificate of Acknowledgment should be found to be defective.

Furthermore, given the distinction between Mr. Lacy and Ms. Iacuzzo, it is difficult to see how the Certificate of Acknowledgment satisfies the certification requirement of § 147.53. As already explained, that section requires the notary public to certify two things. First, the notary public must certify that "[t]he person acknowledging [Ms. Iacuzzo] appeared before him and acknowledged [she] executed the instrument[.]" Ohio Revised Code Ann. § 147.53(A). Did the notary public so certify? The Certificate of Acknowledgment used the phrase "acknowledged before me," which has the meaning set forth in § 147.541. By stating that the Mortgage was "acknowledged before me" by Charles L. Lacy, the Certificate of Acknowledgment signifies that Mr. Lacy "appeared before the [notary public]" and "acknowledged he executed the instrument[,]" Ohio Rev.Code Ann. § 147.541(A) & (B), not that Ms. Iacuzzo did so.[19]

Second, under § 147.53 the notary public also must certify that "[t]he person acknowledging was known to the person taking the acknowledgment, or that the person taking the acknowledgment had satisfactory evidence that the person acknowledging was the person described in and who executed the instrument." Ohio

---

18. As the Sixth Circuit has stated, "a mortgage made by virtue of a power of attorney, must contain the name of the mortgagor," and "prior to the recording of the mortgage, there must be a power of attorney recorded in the office of the county recorder of the county in which the real property is located." *Inger-*

*soll*, 433 Fed.Appx. at 369 (citing Ohio Rev. Code Ann. §§ 1337.02 & 1337.04).

19. "[A]t a minimum, the word *executed* as used in the [Certificate of] Acknowledgment means 'signed.'" *Roberts*, 402 B.R. at 813.

Rev.Code Ann. § 147.53(B). But there is nothing in the Certificate of Acknowledgment to show that Ms. Iacuzzo was known to the notary public, or that the notary public had any evidence that the person, if any, who acknowledged the signature on the Mortgage was Ms. Iacuzzo. For Ohio cases illustrating the importance of accurately identifying in the certificate of acknowledgment the individual who actually signed the instrument, see *Sec. Title & Guar. Co. v. Rukasin*, 1990 WL 9934, at *1 (Ohio Ct.App. Feb. 8, 1990) ("[D]efendant notarized a mortgage subordination document from a Thelma Nader to Womens Federal Savings & Loan. However, the woman claiming to be Thelma Nader was an imposter.") and *Keck v. Keck*, 54 Ohio App.2d 128, 375 N.E.2d 1256, 1257 (1977) ("This is an appeal in a civil case from the refusal of the Common Pleas Court to grant a money judgment against a notary public who acknowledged a purported but forged signature of the plaintiff on the title to his 1974 Ford station wagon. The signature was forged by an unidentified man. The plaintiff's wife (a total stranger to the notary public) misrepresented to the notary public that the signer was her husband....."). *Rukasin* and *Keck* involve, one would hope, unusual fact patterns. Nothing of the sort is alleged to have happened here. Yet one would not know that from reviewing the Certificate of Acknowledgment, which does not verify the identity of Ms. Iacuzzo, and in fact indicates that a person named Charles Lacy appeared and acknowledged his signature. Although GMAC argues that "Charles L. Lacy" means Ms. Iacuzzo, as the Court discussed above, this is simply a bridge too far.

In addition to the foregoing, a case from outside Ohio that is on all fours with this adversary proceeding, *Tiger v. Button Land Co.*, 91 Neb. 433, 136 N.W. 46 (1912), supports the view that the Certificate of Acknowledgment is not in substantial compliance with the certification requirement. In *Tiger*, the Supreme Court of Nebraska held that a deed granted by a principal acting through an attorney-in-fact was defectively executed where the deed's certificate of acknowledgment stated that the principal personally appeared before the notary public and acknowledged the execution of the deed, when instead it was the attorney-in-fact who had done so. *See Tiger*, 136 N.W. at 46 (syllabus ¶¶ 1, 2) ("When the deed on its face purports to be the indenture of the principal, made by his attorney in fact therein designated by name, it may be properly signed by such attorney by his subscribing and affixing thereto the name of his principal alone. *But in such a case he cannot complete the execution of such deed by an acknowledgment which recites that the principal personally appeared before the notary and acknowledged the execution of the deed to be his voluntary act. Such acknowledgment must state the truth, and recite that it is made by the attorney in fact in his representative capacity.*") (emphasis added).

The *Tiger* court's requirement that the certificate of acknowledgment "state the truth" is not inconsistent with this Court's conclusion in *Ingersoll* that a false statement in a certificate of acknowledgment does not necessarily make the certificate invalid. In *Ingersoll*, the certificate of acknowledgment included the incorrect statement that Mr. Ingersoll personally appeared before the notary public, but it also included the correct statement that Ms. Ingersoll personally appeared and acknowledged her signature, which was all that mattered. *See Ingersoll*, 403 B.R. at 513. By contrast, the Certificate of Acknowledgment at issue here—like the certificate of acknowledgment found to be defective in *Tiger*—is completely false (un-

less one indulges in the fiction that "Charles L. Lacy" means "Gina Iacuzzo").

■ The purpose of certification is to "verify the identity of the individual signing the instrument and to establish a fraud-free system for recording the ownership of real property—a necessary prerequisite to any free market." *Gregory v. Ocwen Fed. Bank (In re Biggs)*, 377 F.3d 515, 519 (6th Cir.2004). Holding that the Certificate of Acknowledgment met the certification requirement would undercut this principle. If the certificate of acknowledgment on a mortgage purportedly signed by an attorney-in-fact fails to state that the attorney-in-fact appeared and acknowledged his or her signature, participants in the real estate system have no way of knowing whether the person who signed the mortgage truly was the attorney-in-fact or instead was an imposter.

## H. The Argument Against Substantial Compliance Is Stronger

Reasonable arguments can be made in favor of and against the position that the Certificate of Acknowledgment substantially complies with the certification requirement imposed by Ohio law. The argument in favor of substantial compliance boils down to this: both the holding and the rationale of *Mid-American* can be applied to support the conclusion that the Certificate of Acknowledgment substantially complies with the certification requirement.

By contrast, the argument against substantial compliance is based on higher, as well as more extensive, authority. The rule of law established by the Ohio Supreme Court in *Dodd* supports the conclusion that there has not been substantial compliance on the facts of this case; here, unlike in *Dodd*, the true identity of the person acknowledging the signature on the Mortgage cannot be determined by reference to the instrument. Likewise, the reasoning employed by the Ohio Supreme Court in *Smith's Lessee* counsels against a finding of substantial compliance; that is, just as the *Smith's Lessee* court could not find that "blank" was synonymous with "Ezekiel Folsom," this Court cannot conclude that, in each place his name appears in the Mortgage and the Certificate of Acknowledgment, "Charles L. Lacy" is synonymous with Gina Iacuzzo. In addition, the Court's ruling is consistent with an on-point decision from the highest court of another state, *Tiger*. The ruling also is in line with § 147.53 with respect to the contents of a certification, as well as decisions by Ohio courts illustrating—and the Sixth Circuit's decision in *Biggs* analyzing—the role of the certification requirement, which is to combat fraud in real estate transactions by identifying with as much certainty as possible the individuals who actually signed instruments such as mortgages. The Court finds these authorities to be persuasive data for predicting how the Ohio Supreme Court would rule on the facts of this adversary proceeding. *Cf. Burns*, 435 B.R. at 516 ("[I]nclusion of the name of the person whose signature was acknowledged or some information within the acknowledgment clause which would identify whose signature was acknowledged is, consistent with *Smith's Lessee*, the language of [Ohio Revised Code] § 147.53, and Sixth Circuit precedent, a material part of the acknowledgment clause.").

Although this is admittedly a close call, the Court is more persuaded by the argument that the Certificate of Acknowledgment is not in substantial compliance with the certification requirement and that the Mortgage therefore is avoidable under § 544(a)(3).

## I. Unsecured Nature of GMAC's Claim

■ In Count IV of the Amended Complaint, the Trustee seeks to classify as

unsecured any claim of GMAC on account of the Mortgage. In light of the avoidance of the Mortgage, classification of any such claim as unsecured is warranted. *See Terlecky v. Crevecor Mortg., Inc. (In re Trahan)*, 444 B.R. 865, 870 (Bankr.S.D.Ohio 2011). Summary judgment on the Trustee's request to classify GMAC's claim on account of the avoidance of the Mortgage as an unsecured, nonpriority claim is therefore appropriate.

### J. Preservation of the Avoided Mortgage Under § 551

In Count V, the Trustee seeks preservation of the avoided Mortgage for the benefit of Mr. Lacy's estate. Pursuant to § 551 of the Bankruptcy Code "[a]ny transfer avoided under section ... 544 ... is preserved for the benefit of the estate but only with respect to property of the estate." 11 U.S.C. § 551. After avoidance, § 551 preserves the Mortgage for the benefit of his estate. *See Kebe*, 469 B.R. at 794. Thus, the Trustee is entitled to summary judgment on this claim for relief.

### V. Conclusion

For the foregoing reasons, the Court **GRANTS** the Motion as it relates to Count II of the Amended Complaint (seeking avoidance of the Mortgage pursuant to § 544(a)(3)), Count IV (determining any claim secured by the Mortgage to be a prepetition unsecured claim) and Count V (preserving the avoided Mortgage for the benefit of Mr. Lacy's estate). In light of the Court's ruling that the Mortgage is avoided pursuant to § 544(a)(3), as well as the Trustee's sale of the Property, the other relief that the Trustee requests—a declaratory judgment that the Trustee may sell the Property free of the Mortgage (Count I), avoidance of the Mortgage under § 547 (Count III) and the sale of the Property under § 363 (Count VI)—are

no longer of practical significance and are moot. *See Kebe*, 469 B.R. at 794. The Court, therefore, **DISMISSES** Counts I, III and VI of the Amended Complaint on the basis of mootness. The Court will enter a separate judgment entry in accordance with this memorandum opinion.

**IT IS SO ORDERED.**

